IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 4, 2022

## DOMINIQUE NANCE v. MARK FRANKLIN

**Appeal from the Juvenile Court for Davidson County**
**Nos.   2016-1629, PT242318, PT242458        Sheila Calloway, Judge**

_____

**No. M2021-00161-COA-R3-JV**

_____

This appeal concerns the trial court's denial of the mother's petition to relocate with her minor child.  We affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S. and CARMA DENNIS MCGEE, J., joined.

Kelli Barr Summers, Brentwood, Tennessee, for the appellant, Dominique Nance.

Brad H. Frakes, Nashville, Tennessee, for the appellee, Mark Franklin.

### OPINION
### I.  BACKGROUND

Dominique Nance ("Mother") and Mark Franklin ("Father") met and began a romantic relationship while living in Alabama.[1]  The Child at issue was conceived from their relationship and born in Alabama in June 2011.  Father moved to Tennessee prior to the birth, while Mother followed with the Child thereafter.  They separated in 2015, following a domestic violence incident.  Mother sought an Order of Protection, but the matter was ultimately dismissed.

---

[1] The parties each have a child from a prior relationship.

Following the separation, Mother accepted the primary parenting responsibility for the Child. Father enjoyed visitation from time to time but did not have designated co-parenting time until 2017, when he petitioned for such time. Father has since exercised his co-parenting time regularly.

In 2018, Mother married Carlton Beckwith ("Stepfather"), also from Alabama. Two additional children were born from their relationship. Meanwhile, Father began a relationship with Rosheka Williams, also from Alabama but now living in Tennessee. Ms. Williams has children from a prior relationship. She is not the custodial parent of her children, but she frequents Alabama for her co-parenting time.

Mother and Stepfather made plans to move to Alabama with the Child and their other children. On August 23, 2018, Mother sent a Notice of Intent to Relocate to Father via certified mail. The return receipt on the certified letter came back marked as "unclaimed." On August 30, Mother, through counsel, sent Father a second certified letter, again advising him of her intent to relocate. On September 17, Mother filed the petition to relocate at issue in this proceeding. Father objected to the relocation and filed a response in opposition to the petition and a petition to modify the parenting plan on September 24.

The matter lingered for some time before the case was heard by the Magistrate for the Juvenile Court of Davidson County over the course of several days in September and October 2019. The Magistrate denied Mother's petition to relocate and granted Father's petition for modification, awarding him equal co-parenting time on an alternating bi-weekly basis, by order entered on December 9, 2019. The modified parenting plan was entered on February 7, 2020.

Mother sought a de novo rehearing before the Judge of the Juvenile Court. The matter finally proceeded to a final hearing before the juvenile court over the course of several days in August 2020, during which several witnesses testified. The paternal step-grandmother testified concerning the parties' relationship with the Child. She alleged that Mother's relationship with the Child was superior to Father's following the domestic violence incident.

Mother testified that she lived in Alabama for 30 years prior to her move to Tennessee with Father in 2011. Her extended family resides in Alabama, and she has secured gainful employment in Alabama with an increased salary. Further, Stepfather's family resides in Alabama. He is also employed in Alabama and has secured living arrangements for them in the event of their move. She claimed that Father initially agreed to her plans to relocate but changed his mind once she provided formal notice of her intent. She believed that the school system was more favorable for the Child than his current school, at which he has been the subject of bullying.

Mother suggested that the current parenting plan was detrimental to the Child, who

experienced a decrease in his academic performance that corresponded with Father's increased co-parenting time. She asserted that Father will not discuss the Child's care and specific needs with her. However, she expressed a willingness to facilitate a healthy relationship between Father and the Child.

Mother believed she enjoyed a good relationship with the Child and stated that she was able to spend time with him due to her current favorable work hours. He also enjoyed spending time with his siblings. She stated, in contrast, that the Child does not spend much time with Father due to Father's work schedule. She suggested that the Child spent the majority of Father's co-parenting time with Father's girlfriend, Ms. Williams.

Ms. Williams confirmed that the Child has spent the night at her residence with Father. She also supervised the Child while school was out due to the Covid-19 pandemic. She acknowledged that the Child has traveled with her and Father to Alabama to visit her biological children. She admitted that she no longer has custody of her children following an incident in which she spanked her youngest child with a belt. She explained that she was charged with aggravated child abuse but that the charges have since been dismissed.

Father testified that he enjoyed a good relationship with the Child. Father stated that he and the Child spend time together after school. He retrieves the Child from school and ensures that the Child finishes homework, eats dinner, and plays outside. He is employed and has a suitable residence. He stated that he has sufficient income and has always been able to provide food, clothing, and other necessities for the Child.[2]

Father stated that the Child is also involved with his nonprofit organization, the Distinguished Black Gentlemen Association, which frequented the Child's school prior to the Covid-19 pandemic. He explained that they visited the school every other Friday to meet with children who may need some extra help working through their emotions and disciplinary issues. He stated that the Child attends his meetings with the members of the organization.

Father alleged that Mother does not communicate with him and tends to "run the show" where the Child is concerned. He explained that she has prevented his co-parenting time. He stated that the court awarded him one full week of visitation during Fall Break of 2017 to make up the time he lost due to Mother's refusal to comply with the parenting schedule. He recalled another time in which she refused his co-parenting time due to a mold issue at his residence. He acknowledged that the court directed him to resolve the mold situation prior to his co-parenting time. He claimed that despite their differences, he would facilitate a close relationship between the Child and Mother.

Stepfather confirmed that he is employed in Alabama and that he wishes to live in

---

[2] Mother presented evidence to establish that Father's bank account was regularly overdrawn.

Alabama with Mother and the Child. He explained that they would likely live in one of his family's residences because their initial plan for a residence was delayed due to the ongoing proceedings. Much of his testimony concerned his disdain for Father and their less than cordial relationship. Father confirmed the difficulties in their relationship and his unfavorable feelings toward Stepfather.

The Child, who was nine years old at the time of the hearing, also testified. He expressed concern about moving away from Father and indicated a desire to remain in Tennessee to ensure he maintained a close relationship with both parties.

Following the hearing, the trial court denied Mother's petition to relocate. The court entered a modified permanent parenting plan applicable only if Mother chose to relocate without the Child. Mother chose to remain in Tennessee. This timely appeal followed the entry of an amended final order that clarified some factual information.

## II. ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.      Whether the trial court had jurisdiction to consider Father's response in opposition to the proposed relocation.

B.      Whether this appeal should be dismissed for failure to adhere to the Tennessee Rules of Appellate Procedure.

C.      Whether the trial court erred in its refusal to permit the proposed relocation.

## III. STANDARD OF REVIEW

In non-jury cases such as this one, we review the trial court's factual findings de novo upon the record, affording them a presumption of correctness unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review questions of law de novo, affording the trial court's decision no presumption of correctness. *Armbrister*, 414 S.W.3d at 692 (citing *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011).

- 4 -

# IV. DISCUSSION

## A.

Mother first argues that the trial court erred in considering Father's opposition to her petition when he failed to file a response within 30 days of her notice of intent to relocate. Parental relocation matters are governed by Tennessee Code Annotated section 36-6-108, most recently clarified by our Supreme Court's decision in *Aragon v. Aragon*, 513 S.W.3d 447 (Tenn. 2018). "The Parental Relocation Statute sets out a comprehensive framework for disputes involving the relocation of a primary residential parent, beginning with detailed requirements for notice to the non-relocating parent." *Aragon*, 513 S.W.3d at 458. The statute's notice requirement applicable in this action is as follows:

> (a)    After custody or co-parenting has been established by the entry of a permanent parenting plan or final order, if a parent who is spending intervals of time with a child desires to relocate outside the state or more than fifty (50) miles from the other parent within the state, the relocating parent shall send a notice to the other parent at the other parent's last known address by registered or certified mail. Unless excused by the court for exigent circumstances, the notice shall be mailed not later than sixty (60) days prior to the move. The notice shall contain the following:
>
> (1)    Statement of intent to move;
>
> (2)    Location of proposed new residence;
>
> (3)    Reasons for proposed relocation; and
>
> (4)    Statement that absent agreement between the parents or an objection by the nonrelocating parent within thirty (30) days of the date notice is sent by registered or certified mail in accordance with this subsection (a), the relocating parent will be permitted to do so by law.

Tenn. Code Ann. § 36-6-108(a). Father argues and the record confirms that the first notice, dated August 23, 2018, did not contain a statement providing that absent agreement or objection within 30 days of the notice, the move would be permitted. The August 30 letter did provide such a statement, thereby establishing that Father's petition in opposition to the move was timely filed on September 24. This issue is without merit.

## B. & C.

Father argues that dismissal of this appeal is warranted pursuant to the Rules of the

Court of Appeals. Rule 6 of the Rules of the Court of Appeals provides that the argument for each issue shall contain citations to the record pointing to the alleged errors in the trial court. Rule 6(b) then provides that:

> No complaint for reliance upon action by the trial court will be considered on appeal unless the argument thereon contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument upon such assertion contains a reference to the page or pages of the record where evidence of such fact is recorded.

A review of the appellate brief filed in this case reveals that Plaintiff failed to comply with Rule 6 of the Rules of the Court of Appeals. "For good cause, we may suspend the requirements or provisions of these rules in a given case. However, the Supreme Court has held that it will not find this Court in error for not considering a case on its merits where the plaintiff did not comply with the rules of this Court." *Bean v. Bean*, 40 S.W.3d 52, 54–55 (Tenn. Ct. App. 2000) (citing *Crowe v. Birmingham & N.W. Ry. Co.*, 1 S.W.2d 781, 781–82 (Tenn. 1928)). Regardless of the potential for waiver, we will briefly address the merits of this case in the interest of providing a resolution on the merits for those involved in this parental relocation action, specifically the Child at issue.

Having received a timely petition in opposition to the relocation, the trial court was then required to determine whether relocation was in the best interest of the Child in accordance with the following factors:

> (A)  The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life;
>
> (B)  The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
>
> (C)  The feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties;
>
> (D)  The child's preference, if the child is twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(E) Whether there is an established pattern of conduct of the relocating parent, either to promote or thwart the relationship of the child and the nonrelocating parent;

(F) Whether the relocation of the child will enhance the general quality of life for both the relocating parent and the child, including, but not limited to, financial or emotional benefit or educational opportunity;

(G) The reasons of each parent for seeking or opposing the relocation; and

(H) Any other factor affecting the best interest of the child, including those enumerated in § 36-6-106(a).

Tenn. Code Ann. § 36-6-108(c)(1)–(2).

Here, the trial court provided a detailed order with its findings for each factor. Of particular interest to the court was the feasibility of preserving the Child's relationship with Father in the event of relocation given Mother and Stepfather's disdain for Father. The court further considered Mother's pattern of conduct toward Father in limiting or preventing his co-parenting time. Lastly, the court found that the relocation would not enhance the Child's general quality of life as evidenced by the Child's concern that the relocation would inhibit his relationship with Father. The Child has enjoyed equal visitation with the parties since February 2020. Based upon these findings, the trial court found that relocation was not in the best interest of the Child. The record supports the trial courts findings and ultimate determination that the relocation was not in the Child's best interest when Mother's assertions that the Child's quality of life would improve were speculative, at best. Accordingly, we affirm the decision of the trial court.

## V. CONCLUSION

For the reasons stated above, we affirm the decision of the trial court. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Dominique Nance.

_____
JOHN W. MCCLARTY, JUDGE

- 7 -